UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JAMIE L. HAMILTON,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT CLERK, LLC,<br><br>Defendant. | CIVIL COMPLAINT<br><br>CASE NO.4:25-cv-04052<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

**NOW COMES,** JAMIE L. HAMILTON ("Plaintiff"), by and through the undersigned counsel, complaining of CREDIT CLERK, LLC ("Defendant"), as follows:

## NATURE OF ACTION

1. Plaintiff brings this action seeking redress for violations of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, the Illinois Credit Services Organization Act ("ICSOA"), pursuant to 815 ILCS 605/1 *et seq.*, and the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), pursuant to 815 ILCS 505/1.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA, and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Plaintiff resides in the Central District of Illinois, Defendant conducts business in the Central District of Illinois and all of the events or omissions giving rise to the claims occurred in the Central District of Illinois.

## PARTIES

5. Plaintiff is a natural person and consumer, over 18 years-of-age, residing in Galesburg, Illinois.

6. Defendant is a credit repair organization claiming to help consumers achieve financial stability through their offerings designed to assist consumers in improving their credit ratings. Defendant is a limited liability company located at 600 N. Broad St., Suite 5-391, Middletown, Delaware 19709.

## FACTUAL ALLEGATIONS

7. In around June 2023, Plaintiff was facing financial difficulties and had several debts appearing on her credit report, prompting her to begin looking for companies who may be able to assist her in improving her creditworthiness.

8. Subsequently thereafter, Plaintiff discovered Defendant through its representation that it could help consumers remove negative reporting items and improve their creditworthiness.

9. Plaintiff spoke with Defendant and Defendant's agent represented to Plaintiff that it would be able to: (1) remove negative reporting account from her credit report to prevent creditors harassing her; (2) lower interest rates; and (3) improve Plaintiff's credit rating.

10. Moreover, Defendant assured Plaintiff that it possessed the necessary expertise and experience to achieve such objectives.

11. In or around July 2023, having relied on Defendant's representations, Plaintiff formally enrolled into Defendant's debt credit repair program by entering into a contract with Defendant.

12. Pursuant to the contract, Plaintiff was obligated to make monthly payments of approximately $99, with a start-up fee of $35.

13. Upon information and belief, Defendant received payment for the performance of any service before such service was fully performed.

14. Plaintiff proceeded to make her monthly payments to Defendant in a consistent and timely manner.

15. During the enrollment period, Plaintiff was repeatedly informed that Defendant was actively working to remove negative items from her credit report and in turn will improve her credit rating.

16. Despite Defendant's assurances, Defendant failed to improve Plaintiff's credit rating or remove any negative reporting accounts from her credit report as Defendant represented it would.

17. Despite Defendant's representations, Plaintiff did not end up with lower interest rates.

18. Plaintiff signed up for Defendant's credit repair services based on its representations that remove negative reporting accounts from her consumer credit reports.

19. Throughout its dealings with Plaintiff, Defendant deceptively and misleadingly strung Plaintiff along, telling her what she wanted to hear in order for her to keep making payments, only to turn around and fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's credit repair program.

20. Furthermore, Defendant repeatedly informed Plaintiff that it was working on removing negative reporting accounts from her credit report on her behalf.

21. However, Defendant chronically failed to remove any of Plaintiff's accounts from her credit report, which resulted in Plaintiff's credit score dropping from around 620 to around 437.

22. Despite telling Plaintiff that it would prevent creditors from harassing her, Plaintiff continued to receive harassing phone calls from her creditors.

23. Having had enough of Defendant's ineffective services, Plaintiff ultimately canceled Defendant's services.

24. Plaintiff suffered signification damages as result of Defendant's misrepresentations and omissions, including: financial losses, emotional distress, aggravation, mental anguish, decreased credit score.

25. Simply put, Plaintiff found herself in a much worse financial position after enrolling in Defendant's credit repair program.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

26. Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

27. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA because she is an individual that sought and obtained credit repair services.

28. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or

providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

    **a.    Violations of CROA § 1679b(a)(3) and (a)(4)**

29.    The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

30.    Defendant violated 1679b(a)(3) and (4) by, inter alia, when Defendant deceptively represented that it would be able to remove negative reporting items from Plaintiff's credit report, which will in turn, (1) prevent creditors from harassing Plaintiff and (2) lower Plaintiff's interest rates. Moreover, Defendant misrepresented its services when it said that it would improve Plaintiff's credit score. Despite its representations, Plaintiff failed to perform any of the services that induced Plaintiff to sign up for its credit repair program. Defendant failed to (1) remove (1) negative reporting accounts from Plaintiff's consumer credit reports; (2) lower Plaintiff's interest rates; and (3) improve Plaintiff's credit rating.

    **b.    Violations of CROA § 1679b(b)**

31.    The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

32. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant's practice of charging a "start-up" fee, before such services are performed, is inherently in violation of the CROA. Defendant similarly withheld sums for services it never actually performed.

    c.    **Violations of CROA § 1679c**

33. The CROA, pursuant to 15 U.S.C. § 1679c, outlines the disclosures that must be provided to consumers as well as when and how such disclosures must be provided.

34. Defendant violated the above provision of the CROA through its failure to provide the written disclosures required by the CROA in the manner required.

    d.    **Violations of CROA § 1679d**

35. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for the contracts between credit repair organizations and consumers, including "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679d(b)(4).

36. Defendant violated § 1692d(b)(4) of the CROA through its failure to contain the required disclosure in bold face type in immediate proximity for the place reserved for Plaintiff's signature on the contract.

37. As alleged above, Plaintiff was harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff JAMIE L. HAMILTON respectfully requests the following relief:

    a.    A judgment in Plaintiff's favor for Defendant's violations of the aforementioned sections of CROA;

    b.    An award of actual damages pursuant to 15 U.S.C. § 1679g(a)(1);

    c.    An award of punitive damages pursuant to 15 U.S.C. § 1679g(a)(2)(A);

    d.    An award of Plaintiff's attorney's fees and costs pursuant to 15 U.S.C. § 1679g(a)(3); and

    e.    Any further relief the Arbitrator finds to be just and appropriate.

**COUNT II – VIOLATIONS OF THE ILLINOIS CREDIT SERVICES ORGANIZATION ACT**

38.    Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

39.    Plaintiff is a "buyer" as defined by 815 ILCS 605/3(a).

40.    Defendant is "Credit Services Organization" as defined by 815 ILCS 605/3(d).

    a.    **Violations of ICSOA – 815 ILCS 605/5(1)**

41.    The ICSOA, pursuant to 815 ILCS 605/5(1), prohibits a credit services organization from charging or receiving "any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the buyer. . . ."

42.    Defendant violated 815 ICLS 605/5(1) in much the same way it violated 15 U.S.C. § 1692b(b) outlined above.

    b.    **Violation of ICSOA – 815 ILCS 605/5(4)**

43.    The ICSOA, pursuant to 815 ILCS 605/5(4), prohibits a credit services organization from "[m]ak[ing[ or us[ing] any untrue or misleading representations in the offer or sale of the services of a credit services organization or engage, directly and indirectly, in any act, practice, or

course of business intended to defraud or deceive a buyer in connection with the offer or sale of such services; including but not limited to: . . . the qualifications, training or experience of its personnel; or the amount of credit improvement the consumer can expect to receive as a result of the services."

44. Defendant violated 815 ILCS 605/5(4) through the same conduct that violates 15 U.S.C. § 1679b(a)(3)-(4) outlined above.

45. As alleged above, Plaintiff was harmed by Defendant's conduct.

**WHEREFORE,** Plaintiff JAMIE L. HAMILTON respectfully requests the following relief:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Award Plaintiff actual damages pursuant 815 ILCS 605/11.

c. Award Plaintiff punitive damages pursuant to 815 ILCS 605/11;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to 815 ILCS 605/11; and

e. Awarding any other relief as this Arbitrator deems just and appropriate.

### COUNT III – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT

46. Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

47. Plaintiff is a "person" and a "consumer" as defined by 815 ILCS 505/1(c) and (e) respectively because she is a natural person.

48. Defendant is a "person" as defined by 815 ILCS 505/1(c) because is a business entity.

49. Defendant's credit repair services are governed by 815 ILCS 505/1(f) because Defendant engages the distribution of services as defined by the statute.

50. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

51. Defendant violated the 815 ILCS 505/2 by, *inter alia*, unfairly and deceptively (1) failing to remove negative reporting accounts from Plaintiff's consumer credit reports; (2) failing to lower Plaintiff's interest rate; (3) failing to improve Plaintiff's credit rating.

52. Defendant further violated 815 ILCS 505/2 by implicitly and/or explicitly representing to Plaintiff that its services would bring financial freedom to Plaintiff even though it new it would be unable to achieve the promises it made it Plaintiff.

53. Plaintiff heavily relied on all of the aforementioned false statements to her detriment. Plaintiff's reliance only left Plaintiff in a financial situation far worse than she was in prior to enrolling into Defendant's credit repair services.

54. Defendant's conduct was unfair and deceptive because Defendant misled Plaintiff into trusting that Defendant would act in her best interests and improve her credit rating over time.

55. Upon information and belief, it is Defendant's business practice to mislead consumers into believing that their credit would be improved and that financial situation would drastically change by having unresolved accounts removed from consumer's credit reports and having their interest rates lowered, despite knowing it could never perform such services.

**WHEREFORE**, Plaintiff JAMIE L. HAMILTON respectfully requests the following relief:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to 225 ILCS 429/155(b) and 815 ILCS 505/10a;

c. Awarding Plaintiff punitive damages pursuant to 225 ILCS 429/155(b) and 815 ILCS 505/10a;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to 225 ILCS 429/155(b) and 815 ILCS 505/10a ; and,

e. Awarding any other relief this arbitrator deems just and appropriate.

Dated: February 28, 2025

Respectfully submitted,

*/s/ Mohammed O. Badwan*
Mohammed O. Badwan, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Ave.
Suite 200
Lombard, Illinois 60148
(630) 575-8181 (phone)
(630) 575-8188 (fax)
mbadwan@sulaimanlaw.com